# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WILLIAM O. LEE, | |
| Plaintiff, | Case No. 1:15-cv-6405 |
| v. | Judge John Robert Blakey |
| HOLDEN INDUSTRIES, INC., a Delaware Corporation, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff William O. Lee is a former participant in Defendant Holden Industries, Inc.'s Employee Stock Ownership Plan ("ESOP"). Plaintiff alleges that Defendant, as the administrator of the ESOP, violated its fiduciary duties to him and owes him certain benefits pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). Defendant has moved for summary judgment on both claims. [30] at 1-4. As explained below, Defendant's motion is granted.

## I. Background[1]

### A. Plaintiff's Account

Plaintiff is a former employee of Nosco, Inc., which authorized him to participate in the ESOP. [32] ¶ 1. Plaintiff enrolled in the ESOP on December 14, 2007. *Id.* ¶ 15. Plaintiff terminated his employment with Nosco, Inc. on August 3,

---

[1] The facts are taken from the parties' Local Rule 56.1 statements. [32] refers to Defendant's statement of facts. [37] contains both Plaintiff's responses to Defendant's statement of facts and Plaintiff's statement of additional facts. [39] refers to Defendant's responses to Plaintiff's statement of additional facts.

2012. *Id.* ¶ 16. At the time of his termination, 3,770.7267 stock shares were allocated to Plaintiff's ESOP account. [32] ¶ 18.

In October of 2013, Defendant exchanged those shares allocated to Plaintiff's ESOP account for cash, at a value determined pursuant to the company's most recent stock valuation in 2012. *Id.* ¶ 19. Defendant then offered an optional special distribution to Inactive Participants like Plaintiff whose stock had been exchanged for cash. [37] ¶¶ 21, 22. Plaintiff elected to accept a one-time payment of this entire balance, and he received a check for $146,832.10. [32] ¶ 23. Plaintiff admits that he chose to receive the cash distribution, but insists that he "only accepted the lump sum distribution of the cash proceeds because Defendants wrongly segregated out his Holden stock and threatened to keep the funds in a low-risk/return fund for an undetermined length of time." [37] ¶ 23.

In December of 2013, Plaintiff's counsel wrote to Defendant regarding the disposition of Plaintiff's account. [32] ¶ 27. Plaintiff's counsel specifically argued that: (1) he "anticipate[d]" that the 2013 Stock Valuation would be higher than the 2012 Stock Valuation; and (2) Plaintiff's shares should have been purchased at this higher rate. [37] ¶ 27. After a lengthy exchange of correspondence, Defendant denied Plaintiff's claim for additional benefits. [32] ¶ 31.

### B. The Salient Documents

The parties' dispute turns upon which documents constitute the operative ERISA plan (and thereby control their respective rights and obligations). Relevant language from the disputed documents is set forth below.

### 1. The Stock Ownership Plan

Both parties acknowledge that, prior to July 31, 2013, their relationship was governed, at least in part, by the Stock Ownership Plan dated January 1, 2007. *Id.* ¶ 15. The Stock Ownership Plan provided, *inter alia*:

- Defendant was the ESOP's administrator, which granted it authority to control and manage operation of the ESOP, [32-2] at 42;

- Defendant had "all authority and discretion . . . to interpret and construe the provisions of the Plan" and "determine all questions relating to the eligibility, benefits, and other rights of Employees, Participants, and beneficiaries under the Plan," *id.*;

- Defendant was entitled to purchase stock allocated to accounts held by Inactive Participants (i.e., any participant "who has terminated service with a Sponsoring Employer for any reason other than on a Normal Retirement Date") at "any time prior to the distribution of the balance credited to his or her [account]," *id.* at 28;

- Should Defendant exercise its right to purchase stock allocated to accounts held by Inactive Participants, "the price shall be equal to the fair market value of the Company Stock as of the date of the purchase and sale," *id.*; and

- Distributions were to be made "not later than . . . the last day of the sixth full Fiscal Year following the Fiscal Year in which the Participant terminates employment with a Sponsoring Employer for any reason other than death,

disability, or retirement," though distributions could be accomplished earlier with "the consent of the Company's lenders." *Id.* at 29.

### 2. Amendment 5

Defendant suggests that on July 31, 2013, its Board of Directors enacted a fifth amendment ("Amendment 5") to the Stock Ownership Plan. [31] at 3. Plaintiff conversely insists that Amendment 5 was adopted improperly and is therefore inapplicable here. [37] ¶¶ 8, 9.

Amendment 5 altered the distribution process and specified that the exchange rate to be used when purchasing stock allocated to Inactive Participants would be "based on the value determined at the most recent valuation date." [32-7] at 3.

### 3. The Summary Plan Description

Plaintiff argues that a Summary Plan Description issued on October 1, 2011 (the "2011 SPD") substantively altered the parties' respective rights and obligations. The 2011 SPD provided, *inter alia*:

- "This booklet is intended to be a brief statement and explanation of the major provisions of the ESOP. Please remember that this does not take the place of the actual Plan and Trust documents which govern at all times," [32-9] at 1;

- If a participant ended their employment "for reasons other than retirement, death, or disability, [their] distribution may begin as soon as possible when the valuation is completed for the year after [the] year you leave the Company," *id.* at 5;

4

- "It is the Company's intent to make your distribution according to the timing above, but subject to any restrictions Holden's lenders may impose, the Company has the right to delay your distribution up to but no later than after the valuation is completed for the fifth (5th) year *after* the year you leave the Company," *id.*; and

- "Your account balance in the ESOP is invested in Holden stock. ESOP rules require two things: 1. That you be paid the current fair market value of that stock when you receive your distribution, AND 2. The stock held in the ESOP must be valued by an independent appraiser at least once each year. Since it takes several months to complete the valuation, and you must have a certain period of time to make your decision, your distribution will generally be made approximately 12-14 weeks after the end of the plan year." *Id.* at 6.

## II. Legal Standard

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.,* 739 F.3d 1055, 1060 (7th Cir. 2014). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists, this Court must construe all facts

and reasonable inferences in the light most favorable to the nonmoving party. *See CTL ex rel. Trebatoski v. Ashland Sch. Dist.,* 743 F.3d 524, 528 (7th Cir. 2014).

## III. Analysis

Plaintiff brings two claims, for breach of fiduciary duty and improper denial of benefits under ERISA. Before substantively analyzing Plaintiff's claims, however, the Court must first determine which documents actually constitute the governing plan in this ERISA case.

### A. The Controlling Documents

The parties concede that the Stock Ownership Plan was operative from the time Plaintiff terminated his employment through the distribution at issue. *See supra* at 2. The parties disagree, however, regarding the substantive import of both Amendment 5 and the 2011 SDP. The Court addresses each in turn.

#### 1. Amendment 5

Plaintiff terminated his employment in August 2012, and Defendant exchanged his allocated shares for cash in October 2013. *See supra* at 1-3. During the intervening period (July of 2013), Defendant ostensibly adopted Amendment 5. *See supra* at 3.

Plaintiff insists that this adoption was ineffectual, as there is "no proof of action" by Defendant's board or a duly-appointed designee, as required by the Stock Ownership Plan's amendment procedure. [37] ¶¶ 3, 9. Indeed, Plaintiff purports to "demand[] strict proof" regarding the passage of Amendment 5. *Id.* Defendant conversely argues that the version of Amendment 5 attached to its motion is "the

6

final, fully executed, duly authorized, and dated Amendment 5." Defendant's characterization is supported by citations to the record; Plaintiff's denial is not. *Compare* [32] ¶ 8 (citing [32-1] ¶3(a)) *with* [37] ¶¶ 8, 9.

Plaintiff's dispute is procedurally flawed. Local Rule 56.1(b)(3) requires the party opposing summary judgment, when disputing a fact, to make "specific references to the affidavits, parts of the records, and other supporting materials relied upon." Plaintiff's putative demand for "strict proof," absent any citation to the record, is therefore insufficient. It "is the usual practice of courts to disregard improperly supported denials and fact statements, as well as immaterial assertions." *Nehan v. Tootsie Roll Indus., Inc.*, 54 F. Supp. 3d 957, 960 (N.D. Ill. 2014), *aff'd*, 621 F. App'x 847 (7th Cir. 2015). This Court will follow *Nehan*'s "usual practice" in this case. For the purposes of resolving the pending motion, the Court finds that Defendant's Board of Directors effectively implemented Amendment 5.

### 2. 2011 SDP

Plaintiff insists that the terms of the 2011 SDP control here, given several ostensible discrepancies between the 2011 SDP and the Stock Ownership Plan. Plaintiff's argument is contrary to established precedent, and therefore rejected.

In *Cigna Corporation v. Amara*, the Supreme Court clearly held that summary plan descriptions like the 2011 SDP are not governing plan documents for the purposes of a benefits claim. 563 U.S. 421, 438 (2011) ("[W]e conclude that the summary documents, important as they are, provide communication with beneficiaries *about* the plan, but that their statements do not themselves constitute

7

the *terms* of the plan for purposes of § 502(a)(1)(B).") (emphasis in original). The Court initially observed that it is difficult to square an alternative interpretation with "the provision that obliges plan administrators to furnish summary plan descriptions. The syntax of that provision, requiring that participants and beneficiaries be advised of their rights and obligations 'under the plan,' suggests that the information *about* the plan provided by those disclosures is not itself *part of* the plan." *Id.* at 436 (emphasis in original). The Court also explained that lending plan descriptions the force of law would improperly give "the administrator the power to set plan terms indirectly by including them in the summary plan descriptions." *Id.* at 437. Finally, the Court noted that Plaintiff's approach would undermine "the basic summary plan description objective," insofar as administrators working under such a rule would be forced "to sacrifice simplicity and comprehensibility in order to describe plan terms in the language of lawyers." *Id.*

Plaintiff attempts to evade this controlling precedent by suggesting that Defendant, by "advising Lee that the SPD was where to go to determine his rights," rendered the 2011 SPD a plan document. [36] at 13. Plaintiff's novel position relies upon *Mondry v. American Family Mutual Insurance Company*, 497 F. App'x 603, 609 (7th Cir. 2012), and *Pa. Chiropractic Association v. Blue Cross Blue Shield Association*, No. 09-cv-5619, 2014 WL 1276585, at *10 (N.D. Ill., March 28, 2014). Both are unavailing.

*Mondry* is inapposite here because defendant in that case, "under the unique circumstances," evidenced an "express reliance" on documents outside the plan itself. Defendant's identification here of the 2011 SPD is not equivalent to the "express reliance" that justified *Mondry*'s exception to the general rule. Indeed, the 2011 SPD, by its own terms, was merely a "brief statement and explanation" that did "not take the place of the actual Plan and Trust documents which govern at all times." [32-9] at 1.

*Pa. Chiropractic* is of similarly limited precedential value, given its reversal on unrelated grounds. *Pa. Chiropractic Ass'n v. Indep. Hosp. Indem. Plan, Inc.*, 802 F.3d 926, 927-28 (7th Cir. 2015). *Pa. Chiropractic* was also a far cry from this case. As a preliminary matter, the parties there had no readily-identifiable "plan" document at all. *Pa. Chiropractic Ass'n*, 2014 WL 1276585, at *9. Indeed, the court was unable to determine which materials, among the thousands of plan-related documents submitted, constituted the plan itself. *Id.* In those confused circumstances, and in light of the parties' failure to identify a governing plan document akin to the Stock Ownership Plan here, the court was willing to expand the scope of relevant documents. *Id.* No similar concerns are present in this case.

In the end, "even if a summary plan description contradicts the full plan, the terms of the full plan continue to govern participants' entitlements. ERISA directs judges to enforce the terms of a plan; it does not authorize judges to change those terms." *Sullivan v. CUNA Mut. Ins. Society*, 649 F.3d 553, 557 (7th Cir. 2011). The 2011 SPD is not a plan document.

## B. Count 1 – Breach of Fiduciary Duty

To state a claim for breach of fiduciary duty pursuant to ERISA § 502(a)(3), Plaintiff must "establish: (1) that the defendants are plan fiduciaries; (2) that the defendants breached their fiduciary duties; and (3) that the breach caused harm to the plaintiff." *Jenkins v. Yager*, 444 F.3d 916, 924 (7th Cir. 2006) (internal quotation omitted). Fiduciaries are obligated to "provide accurate information under ERISA [but] negligence in fulfilling that duty is not actionable." *Tompkins v. Cent. Laborers' Pension Fund*, 712 F.3d 995, 1002-03 (7th Cir. 2013) (internal quotations omitted). Instead, there must have been an intent to "disadvantage or deceive" plan participants. *Id.* (internal citations omitted). Plaintiff must also demonstrate that his proposed remedy qualifies as "appropriate equitable relief" under ERISA § 502(a)(3).

Plaintiff argues that by promulgating the 2011 SPD, "Defendant breached its alleged fiduciary duty by failing to provide clear documents and information." [36] at 18.[2] Plaintiff specifically contends that, based upon the 2011 SPD, he believed the stock allocated to his account was going to be bought at the price set by the 2013 Stock Valuation. *Id.* Plaintiff's belief was ostensibly grounded in the 2011 SPD's call for pricing at "fair market value," with distribution authorized to "begin as soon as possible when the valuation is completed for the year after the year [he left] the Company." *Id.* (quoting [32-9]).

---

[2] Plaintiff's fiduciary duty claim presumes that the 2011 SPD was not a governing plan document.

### 1. Defendant Did Not Breach Its Fiduciary Obligations

Defendant argues that it is entitled to summary judgment on Plaintiff's fiduciary duty claim because there is no suggestion that Defendant intended to mislead or disadvantage plan participants. [31] at 13. In response, Plaintiff insists that "intent to deceive" is not required for breach of fiduciary duty claims in the ERISA context. [36] at 18 (citing *Kenseth v. Dean Health Plan, Incorporated*, 610 F.3d 452, 472 (7th Cir. 2010)). In *Kenseth* the Seventh Circuit explained:

> [W]hen the plan documents are clear and the fiduciary has exercised appropriate oversight over what its agents advise plan participants and beneficiaries as to their rights under those documents, the fiduciary will not be held liable simply because a ministerial, non-fiduciary agent has given incomplete or mistaken advice to an insured. . . . In that situation, the fiduciary has done what it can reasonably be expected to do to ensure that the insured receives accurate and complete information; that mistakes may nonetheless occur is an unfortunate fact of life that does not bespeak actionable negligence on the part of the fiduciary.
>
> But by supplying participants and beneficiaries with plan documents that are silent or ambiguous on a recurring topic, the fiduciary exposes itself to liability for the mistakes that plan representatives might make in answering questions on that subject. . . . This is especially true when the fiduciary has not taken appropriate steps to make sure that ministerial employees will provide an insured with the complete and accurate information that is missing from the plan documents themselves.

610 F.3d 452, 472 (7th Cir. 2010) (internal citation omitted).

As the foregoing selection demonstrates, *Kenseth* addressed plan documents that were silent or ambiguous—it did not abrogate the intent requirement for fiduciary duty claims under ERISA. Moreover, the Seventh Circuit remedied any

potential confusion on this score three years later. *See Tompkins*, 712 F.3d at 1003 (to pursue a breach of fiduciary duty claim in the ERISA context, "there must have been an intent to disadvantage or deceive plan participants") (internal quotations omitted).

Ultimately, even under Plaintiff's more exacting standard, Defendant's conduct did not qualify as a breach of its fiduciary duty. Neither Defendant nor its agents made any oral misstatements or mischaracterizations regarding the terms of the Stock Ownership Plan. The Stock Ownership Plan itself was also not ambiguous, even before Amendment 5 was passed. Indeed, it explicitly enumerated the procedure Defendant followed in this case. *See supra* at 3. Prior to Amendment 5, Defendant was authorized to purchase, at "fair market value," stock allocated to accounts held by former employees at "any time prior to the distribution of the balance credited to his or her [account]." [32-2] at 42. This is precisely what Defendant did here. *See supra* at 1-3.

The 2011 SPD also comported with Defendant's obligation to "provide accurate information under ERISA." *Tompkins*, 712 F.3d at 1003. The 2011 SPD authorized Defendant to purchase stock allocated to Plaintiff's account at "fair market value," [32-9] at 6, which is exactly what Defendant did. *See supra* at 1-3. The 2011 SPD did contain a default schedule for distributions, but that schedule was displaced by Defendant's "one-off" distribution offer, which Plaintiff admits he accepted. *Id.* Moreover, any ostensible reliance upon the 2011 SPD's distribution schedule was facially unreasonable insofar as that document was, by its own terms,

a "brief statement and explanation" that did "not take the place of the actual Plan and Trust documents which govern at all times." [32-9] at 1. Defendant's decision to seek simplicity over exacting detail in the 2011 SPD does not amount to a breach of its fiduciary duty.

Plaintiff has adduced no evidence that Defendant exhibited the requisite intent to justify his breach of fiduciary duty claim. In fact, Defendant provided Plaintiff and other plan participants with accurate information, consistent with its obligations under ERISA. Accordingly, Defendant is entitled to summary judgment on Count 1.

## 2. Duplicative Claims

Defendant also argues that Plaintiff's fiduciary duty claim is impermissibly duplicative of his claim for denial of benefits. [31] at 13. Defendant's argument is premised upon the notion that ERISA § 502(a)(3) only authorizes "appropriate equitable relief," while Plaintiff essentially seeks monetary damages. [36] at 1 ("Lee is due the sum of 36,651.46 in either benefits or $36,651.46 plus interest in equitable relief."). To be sure, the "appropriate equitable relief" authorized by ERISA § 502(a)(3) is "limited to those categories of relief that were *typically* available in equity during the days of the divided bench (meaning, the period before 1938 when courts of law and equity were separate)." *Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan*, 136 S. Ct. 651, 657 (2016) (internal quotation omitted) (emphasis in original). The Court, however, "need not wade into this morass." *Brosted v. Unum Life Ins. Co. of Am.*, 421 F.3d 459, 466 (7th Cir.

2005). As noted *supra*, Plaintiff has "fail[ed] as a matter of law to establish that the defendant[] breached [its] fiduciary duty," and summary judgment is granted as to Count 1 on that basis. *Id.*

## C. Count 2 – Improper Denial of Benefits

Plaintiff's claim pursuant to ERISA Section § 502(a)(1)(B) "seeks relief for additional benefits" due to him under the plan. [36] at 9. A denial of ERISA benefits is subject to *de novo* review, "unless the benefit plan gives the administrator or fiduciary discretionary authority . . . to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The Stock Ownership Plan contains precisely this sort of provision. [32-2] at 42 (granting Defendant "all authority and discretion . . . to interpret and construe the provisions of the Plan" and "determine all questions relating to the eligibility, benefits, and other rights of Employees, Participants, and beneficiaries under the Plan").

Accordingly, this Court's review of Defendant's decision to deny Plaintiff's benefit request "is limited to an arbitrary-and-capricious standard." *Tompkins,* 712 F.3d at 999 (7th Cir. 2013). As such, Defendant's decision will be upheld so long as: (1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome; (2) the decision is based on a reasonable explanation of relevant plan documents; or (3) the Defendant has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem. *Id.*

Defendant's decision to deny Plaintiff's request for additional benefits was "based on a reasonable explanation of the relevant documents." *Tompkins*, 712 F.3d

at 999. The Stock Ownership Plan, both before and after the passage of Amendment 5, authorized Defendant to purchase shares allocated to Plaintiff's account. *See supra* at 1-3. Before Amendment 5, those shares were to be purchased at "fair market value." [32-2] at 28. After Amendment 5, those shares were to be purchased at the value set by the most recent stock valuation. [32-7] at 3. This is a distinction without a difference. Under either provision, Defendant's decision to price the stock at issue using the 2012 Stock Valuation was eminently reasonable. Because Defendant's denial of Plaintiff's benefit request was neither arbitrary nor capricious, Defendant is entitled to summary judgment on Count 2.

## IV. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment [30] is granted. Civil case terminated.

Dated: November 21, 2016

Entered:

_____
John Robert Blakey
United States District Judge

15